UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ROBERT HOOT,<br><br>      Plaintiff,<br><br>v.<br><br>NYE COUNTY, NEVADA; et al.,<br><br>      Defendants. | Case No. 13-cv-02142-LDG-GWF<br><br>ORDER |

   This is a civil rights action in which plaintiff Robert Hoot alleges that defendant Deputy Kenneth Nagy of the Nye County Sheriff's Office subjected him to an unlawful search and seizure when Nagy stopped Hoot near a national security site and requested Hoot to furnish identification. Hoot also alleges that Nye County failed to properly train and supervise its officers with respect to lawful search and seizure practices. Defendants have filed a motion for summary judgment (#25, opposition #28, reply #30). A grant of summary judgment is appropriate only where the moving party has demonstrated through "the pleadings, the discovery and disclosure materials on file, and any affidavits" that there is no genuine issue of material fact. Fed. R. Civ. P. 56©; <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 248 (1986). All justifiable inferences must be viewed in the light most favorable to the non-moving party. <u>County of Tuolumne v. Sonora Cmty. Hosp.</u>, 236 F.3d 1148, 1154 (9th Cir. 2001). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. <u>Fairbank v. Wunderman Cato Johnson</u>, 212 F.3d 528, 531 (9th Cir. 2000). The burden then shifts to the non-moving party to go beyond the pleadings and set forth

specific facts demonstrating there is a genuine issue for trial. Id. The party opposing summary judgment "must cite to the record in support of the allegations made in the pleadings to demonstrate that a genuine controversy requiring adjudication by a trier of fact exists." Taybron v. City & County of San Francisco, 341 F.3d 957, 960 (9th Cir. 2003). If the non-moving party meets its burden, summary judgment must be denied. Fed. R. Civ. P. 56( c). Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

I.      Background

On the afternoon of Tuesday, January 17, 2012, Hoot was walking dressed in camouflage along an isolated dead end road leading to a security gate accessing a national security site. Hoot was reading an old, hard-cover book as he walked. Deputy Nagy was patrolling the road that afternoon, and encountered Hoot approximately 1.6 miles from the security gate. Individuals had attempted to illegally infiltrate the security site from this area in the past. As Nagy's vehicle approached Hoot, Hoot continued walking and reading, and angled into a ditch located some eight feet from the road. At the time, the road was deserted, and there were no other people or automobiles on the road besides Nagy and Hoot. Nor were there any structures along the dead-end road.

Nagy stopped Hoot and asked him what he was doing on an isolated road. Hoot explained that he was taking an afternoon stroll, and asked whether Nagy thought he was breaking the law. At that point, Nagy instructed Hoot to stand in front of the police car, and Hoot complied. Nagy asked Hoot for identification. Hoot asked Nagy for the basis of the detention. Nagy replied that people did not typically walk in isolated areas reading books near national security sites. Following this brief exchange, Hoot provided Nagy with his identification. Nagy immediately radioed in the identification and after everything came up clear, Nagy allowed Hoot to continue his walk.

The court is fundamentally presented with two questions.  First, whether Nagy had reasonable suspicion supported by articulable facts that criminal activity "may be afoot." United States v. Palos-Marquez, 59 F.3d 1272 (9th Cir. 2010).  Second, even if Nagy was not justified in stopping Hoot, whether Nagy and his superiors are entitled to qualified immunity.

II.     Reasonable Suspicion

> The Fourth Amendment prohibits "unreasonable searches and seizure" by the Government and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest.  Because the balance between the public interest and the individual's right to personal security tilts in favor of a standard less that probable cause in such cases, the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot.

United States v. Arvizu, 534 U.S. 266, 273 (2002) (citations omitted).

The concept of reasonable suspicion cannot be reduced to a neat set of legal rules.  Id. at 274.  Instead, the court "must look to the totality of the circumstances." United States v. Valdes-Vega, 738 F.3d 1074, 1078 (9th Cir. 2013) (en banc) (citing Arvizu, 534 U.S. at 273); see also Ornelas v. United States, 517 U.S. 690, 695 (1996) (reasonable suspicion is a "commonsense, nontechnical conception[] that deal[s] with the 'factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act") (citations omitted).  A consideration of the totality of the circumstances "also precludes a 'divide-and-conquer analysis' because even though each of the suspect's "acts was perhaps innocent in itself . . . taken together, they [may] warrant[] further investigation." Valdes-Vega, 738 F.3d at 1078.

In this case, a totality of the circumstances makes the following particularized facts worthy of consideration: (1) Hoot was walking dressed in camouflage alone on a deserted dead-end road without any automobiles, persons or structures in sight, (2) it was afternoon, and Hoot was reading from an old, hardback book as he walked, (3) the road on which Hoot was walking ended at the gate of a national security site, (4) previous unauthorized infiltrators had entered or attempted to enter the site at this location in the past, (5) Deputy Nagy was patrolling the road in his vehicle and as he approached Hoot, Hoot angled off the road into a ditch some eight feet off the road, (6) Nagy

3

encountered Hoot approximately 1.6 miles from the security gate, (7) Nagy asked him what he was doing on a deserted road, (8) when asked the purpose of the stop, Nagy replied that people did not typically walk in isolated areas reading books near national security sites.

The court finds that, while this is a close case, the totality of the circumstances leads to the conclusion that Nagy had reasonable suspicion to stop Hoot for the short period of the investigation. The oddness or idiosyncratic nature of a situation can contribute, through the experience of a police officer, to a reasonable suspicion that criminal activity may be afoot. See Arvizu, 534 U.S. at 276. Moreover, even innocent, noncriminal acts can foster reasonable suspicion in the total context. Id. at 1080 (citing Arvizu). Here, Hoot was walking on a dead ending deserted road toward a national security site in an area illegally breached by infiltrators in the past. Hoot was reading while walking, and as Nagy's police car approached, Hoot veered off into a ditch eight feet off the highway. Whatever Hoot's reason for walking off the roadway at that point, it could very well have appeared as an avoidance of Nagy. And as Nagy's explanation to Hoot indicated, it certainly seemed unusual and odd that Hoot would be walking and reading in the middle of nowhere while approaching the security site. Nor does the court find that Hoot's 1.6 mile distance from the site discounts Nagy's reasonable suspicion since and individual, depending on the pace, may have gotten to the security gate within a relatively short period of time. Finally, the court observes that Nagy noticed that Hoot was wearing camouflage which could have contributed to the sense that Hoot possibly did not want to be easily observed. Under a view of the totality of the circumstances in this case, Deputy Nagy had sufficient justification for making an investigatory stop of Hoot.[1]

---

[1] The court's determination that no constitutional violation occurred also entitles defendants to summary judgment on plaintiff's Monell claim.

4

II. <u>Qualified Immunity</u>

Even if Deputy Nagy lacked a reasonable suspicion from the circumstances that criminal activity was afoot, he and his superiors would be entitled to qualified immunity. Government actors performing discretionary functions are generally "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). Even where the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act. <u>Anderson v. Creighton</u>, 483 U.S. 635, 641 (1987). A defendant is entitled to immunity under this objective reasonableness standard if "officers of reasonable competence could disagree" on the legality of the defendant's actions. <u>Malley v. Briggs</u>, 475 U.S. 335 (1986).

Here, the court finds that the law with respect to Deputy Nagy's justification to stop Hoot under these circumstances was not clearly established. No authority of which a reasonable person would have known is analogous to whether Nagy, upon encountering an individual dressed in camouflage approaching a national security site (that had been previously breached by infiltrators) on a desolate one way road with no signs of other persons, automobiles, or structures, who then veered off the road as the police car approached–had justification for a stop. Morever, there is such an uncertainty regarding the state of the law with regard to investigatory stops in a situation such as this, that Nagy and his superiors are entitled to qualified immunity. Accordingly,

THE COURT HEREBY ORDERS that defendants' motion for summary judgment (#25) is GRANTED.

DATED this ___ day of March, 2015.

_____
Lloyd D. George
United States District Judge